UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


BARBARA E. HATCHER,

          Plaintiff,


v.                                   Civil Action No. 2:12-cv-5793


BANK OF AMERICA, N.A.
as successor in interest to
COUNTRYWIDE HOME LOANS, INC. and
COMPASS RESOLUTION SERVICES, LLC and
BANK OF NEW YORK MELLON and
JOHN DOE HOLDER,

          Defendants.



<u>MEMORANDUM OPINION & ORDER</u>

          Pending is the motion to dismiss by defendant Bank of

America, N.A. ("Bank of America"), Compass Resolution Services,

LLC ("Compass"), Specialized Loan Servicing ("Specialized Loan")[1],

and The Bank of New York Mellon ("Mellon") (collectively, the

"defendants"), filed September 28, 2012.


I. Background

          This case arises from an allegedly predatory loan by the

defendants to plaintiff Barbara E. Hatcher.  The following facts

---

[1] The parties stipulated to Specialized Loan's dismissal without
prejudice on November 26, 2012.

are taken from Ms. Hatcher's second amended complaint (the "complaint").

Ms. Hatcher is a seventy-eight year old widow who suffers from Alzheimer's and has a ninth grade education. Compl. ¶ 1. She lives at her home in Charleston, West Virginia. Id. Her two mortgages on that property are the subject of this dispute. Id.

Countrywide Home Loans, Inc. ("Countrywide") is the originator of Ms. Hatcher's two loans. The complaint describes Bank of America as the successor in interest to Countrywide and liable for all claims and defenses against Countrywide. Id. ¶ 2. The defendants, however, state that Countrywide is a separate and distinct legal entity; they reserve the right to assert their separate nature as a defense at a later time if necessary. Mot. Dismiss 1 n.1. Compass is a Delaware company with a principal place of business in Santa Ana, California. Compl. ¶ 3. Compass is the servicer for Hatcher's second mortgage. Id. Specialized Loan is the current servicer for Ms. Hatcher's first mortgage. Id. ¶ 4. Mellon is the current holder of Ms. Hatcher's first mortgage and has a principal place of business in New York, New York. Id. ¶ 5. John Doe Holder is the unidentified holder of Hatcher's second mortgage. Id. ¶ 6.

Ms. Hatcher and her husband James Hatcher purchased her current home in Charleston, West Virginia in or around 1970 for $15,000 to $16,000. Id. ¶ 7. Mr. Hatcher handled financial matters for the couple until his death in 2010. Id. ¶ 8. In March 1998, Countrywide originated a loan with the Hatchers for $43,000. Id. ¶ 9. Ms. Hatcher alleges that the loan was based on an inflated appraisal. Id. Countrywide originated additional loans in 1999, 2001, and 2004, which Ms. Hatcher alleges were all unwise and based on inflated appeals. Id.

In the Spring of 2006, Countrywide solicited the Hatchers for another refinance. Id. ¶ 10. Ms. Hatcher alleges that Countrywide arranged for an appraisal with an inflated suggested value of $83,000. Id. ¶ 11. The actual value of the home was approximately $56,800. Id. ¶ 12. Countrywide arranged for an individual to go to the Hatcher's home to execute the loan documents. Id. ¶ 13. From that individual, the Hatchers learned for the first time that the loan would be a "piggy back loan," in which Countrywide originated a first and second mortgage simultaneously. Id. ¶ 14. The first mortgage was for $66,400 with an APR of 8.33%. Id. ¶ 15. The second mortgage was for $16,600 with an APR of 13%. Id. ¶ 16. The second mortgage also contained a balloon payment at the end of fifteen years such that after making payments totaling $33,000, a lump sum payment of

$114,696.30 would come due.  Id.  Both mortgage loans contained 3% origination fees for Countrywide.  Id. ¶¶ 15-16.

Ms. Hatcher alleges that the closing was rushed and that her husband did not understand the details of the transaction. Id. ¶ 17.  Mr. Hatcher died on October 25, 2010.  Id. ¶ 19.  Ms. Hatcher lives on a limited fixed income and states that she is unable to afford the payments on the mortgages.  Id. ¶ 20.  She alleges that she sought assistance from Bank of America, but none was provided.  Id. ¶ 21.  In or around Fall 2011, Bank of America transferred the servicing of Ms. Hatcher's second mortgage until it was ultimately assigned to Compass.  Id. ¶ 22.

On November 14, 2011, Ms. Hatcher filed this action in the Circuit Court of Kanawha County, West Virginia.  On March 1, 2012, Ms. Hatcher filed a first amended complaint, and on August 23, 2012 she filed a second amended complaint.  The second amended complaint revokes an earlier stipulation that the amount in controversy was less than the $75,000 jurisdictional amount.  Id. ¶ 1.  On August 24, 2012, as a result of this change, the defendants removed the action to federal court.

The complaint alleges three counts: Count I, unconscionable inducement as to the first 2006 mortgage; Count II, unconscionable inducement as to the second 2006 mortgage; and Count III, violation of the West Virginia Consumer Credit and

Protection Act ("WVCCPA") for refusal to provide a statement of the account.

## II. The Governing Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (alternation in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).  Facial plausibility exists when the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 566 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The plausibility standard "is

not akin to a 'probability requirement,'" but it requires more than a "sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

In assessing plausibility, the court must accept as true the factual allegations contained in the complaint, but not the legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The determination is "context-specific" and requires "the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III. Discussion

A.   Unconscionable Inducement

Counts I and II set forth identical allegations of unconscionable inducement with respect to the first and second mortgages.  Section 46A-2-121 of the WVCCPA provides the following instructions respecting unconscionability:

> (1) With respect to a transaction which is or gives rise to a consumer credit sale or consumer loan, if the court as a matter of law finds:
>
> (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
>
> (b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the

6

> agreement, or may enforce the remainder of the
> agreement without the unconscionable term or part,
> or may so limit the application of any
> unconscionable term or part as to avoid any
> unconscionable result.
>
> (2) If it is claimed or appears to the court that the
> agreement or transaction or any term or part thereof may
> be unconscionable, the parties shall be afforded a
> reasonable opportunity to present evidence as to its
> setting, purpose and effect to aid the court in making
> the determination.

W. Va. Code § 46A-2-121.

The principle of unconscionability is "the prevention of oppression and unfair surprise and not the disturbance of reasonable allocation of risks or reasonable advantage because of superior bargaining power or position."  Orlando v. Fin. One of W. Va., Inc., 179 W. Va. 447, 369 S.E.2d 882, 885 (1988) (citation omitted).  The test for unconscionability is

> whether, in the light of the background and setting of
> the market, the needs of the particular trade or case,
> and the condition of the particular parties to the
> conduct or contract, the conduct involved is, or the
> contract or clauses involved are so one sided as to be
> unconscionable under the circumstances existing at the
> time the conduct occurs or is threatened or at the time
> of the making of the contract.

Arnold v. United Cos. Lending. Corp., 204 W. Va. 229, 235, 511 S.E.2d 854, 860 (1998) (quoting Orlando, 179 W. Va. at 450, 369 S.E.2d at 885).

This court has previously stated that "[u]nconscionability claims should but rarely be determined based on the pleadings alone with no opportunity for the parties to

present relevant evidence of the circumstances surrounding the
consummation of the contractual relationship." Mallory v. Mortg.
Am., Inc., 67 F. Supp. 2d 601 (S.D. W. Va. 1999) (citing Carlson
v. Gen. Motors Corp., 883 F.2d 287, 292 (4th Cir. 1989)).  "'The
particular facts involved in each case are of utmost importance
since certain conduct, contracts or contractual provisions may be
unconscionable in some situations but not in others.'" Arnold,
204 W. Va. at 235, 511 S.E.2d at 860 (quoting Orlando, 179 W. Va.
at 450, 369 S.E.2d at 885).  Accordingly the WVCCPA emphasizes the
need for discovery in assessing unconscionability claims: "If it
is claimed or appears to the court that the agreement or
transaction or any term or part thereof may be unconscionable, the
parties shall be afforded a reasonable opportunity to present
evidence as to its setting, purpose and effect to aid the court in
making the determination."  W. Va. Code § 46A-2-121.

       Ms. Hatcher alleges that Countrywide has a history of
arranging for inflated appraisals to justify the origination of
predatory loans.  Compl. ¶¶ 24, 30.  She claims that she is an
unsophisticated consumer, did not understand the details of the
transaction, and was induced into the loan by misleading and
deceptive conduct.  Id. ¶¶ 25-26, 31-32.  This conduct included
misrepresentations as to the value of the home and the origination
of the piggy back loan.  Id. ¶¶ 26, 32.  Ms. Hatcher asserts that
under the circumstances the loan contained terms that were an

unfair surprise, such as indebtedness in excess of the mortgaged property's value, the presence of two loan transactions, an excessive interest rate, and a balloon payment.  Id. ¶¶ 27, 33.

In moving to dismiss Counts I and II, the defendants first assert that Ms. Hatcher's unconscionable inducement claims are time-barred by the WVCCPA statute of limitations, codified at § 46A-5-101.  Mem. Supp. Mot. Dismiss 5.  Section 46A-5-101, however, provides that violations arising from consumer loans have a one-year limitations period running from the "due date of the last scheduled payment of the agreement."  The West Virginia Supreme Court of Appeals applies the statute liberally and consistently with that language.  See Dunlap v. Friedman's Inc., 213 W. Va. 394, 399, 582 S.E.2d 841, 846 (2003).  As there is no indication that the plaintiffs' last scheduled payment occurred more than a year prior to their filing suit, the claim is timely.

The defendants next contend that Ms. Hatcher has insufficiently pled a claim for unconscionable inducement because she has not demonstrated both procedural and substantive unconscionability.  Mem. Supp. Mot Dismiss 6-7.  Respecting procedural unconscionability, the defendants note that Ms. Hatcher fails to allege any need for immediate financial assistance or lack of meaningful alternatives.  Id. at 7.  Respecting substantive unconscionability, the defendants emphasize that Ms.

Hatcher merely lists the loan terms and fails to make any allegations that the terms were unconscionable.  Id. at 7-8.  The defendants argue that Ms. Hatcher's reliance on her husband for financial matters and her decision to not read the loan documents she signed do not indicate unfairness or create unconscionability.  Id.  On the contrary, they contend that the loan being her fifth mortgage loan on the property suggests experience with the loan documents and closing.  Id.

The court finds that Ms. Hatcher has sufficiently stated an unconscionability claim.  Ms. Hatcher's allegations concerning her advanced age and limited education plausibly suggest the presence of a gross inadequacy of bargaining power.  Claims that the closing was rushed and that misrepresentations were made as to both the appraisal and the piggy back loan further indicate procedural unconscionability.  At the same time, her claim that the value of the loan exceeded the true value of her home provides an adequate basis for substantive unconscionability.[2]  In sum, Ms. Hatcher has established that the transaction "may be unconscionable," which is all § 46A-2-121(2) requires before the

---

[2] The defendants contend that this court's unpublished decision in Corder v. Countrywide Home Loans, Inc. counsels for dismissal, but, unlike in Corder, Ms. Hatcher's complaint states facts showing both how she is unsophisticated and by what amount the appraisal was inflated.  See No. 2:10-0738, 2011 WL 289343, at *9 (S.D. W. Va. Jan. 26, 2011).

parties "shall be afforded a reasonable opportunity to present evidence."

B.    Illegal Debt Collection

Count III alleges that the defendants violated WVCCPA § 46A-2-114(2) and § 46A-2-115(d) by failing to comply with Ms. Hatcher's requests for loan information.  In her response to the defendants' motion to dismiss, Ms. Hatcher acknowledges that her counsel received an account history from Bank of America after filing this action.  Opp'n Mot. Dismiss 10-11.  She therefore abandons Count III.

IV.

Based upon the foregoing discussion, it is, accordingly, ORDERED that the defendants' motion to dismiss be granted as to Count III and otherwise denied.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER:    April 25, 2013

John T. Copenhaver, Jr.
United States District Judge